1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OREGON MUTUAL INSURANCE COMPANY, an Oregon corporation, | ) ) ) | 1:09-CV-452  AWI SMS |
| Plaintiff, | ) ) | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | ) ) | |
| NATIONAL GENERAL INSURANCE COMPANY, a Missouri corporation, | ) ) ) | (Doc. Nos. 18, 20) |
| Defendant. | ) ) | |

18       This is an insurance coverage dispute between Plaintiff Oregon Mutual Insurance Co.

19 ("Oregon") and Defendant National General Insurance Co. ("National").  Oregon issued a

20 homeowner's insurance policy to the insureds, and National issued an automobile insurance

21 policy to the insureds.  Oregon settled a lawsuit brought against the insureds after National

22 refused the tender.  Both parties now move for summary judgment on whether the National

23 automobile policy provided coverage for the insureds.  The parties have submitted stipulated

24 undisputed facts,[1] and there are no disputed issues of fact.  After reviewing the cross motions of

25 the parties, the Court will grant National's motion and deny Oregon's motion.

26
27
28

---

[1]The stipulated facts form the basis of the factual background section of this order.  A reference to "Fact" refers to these stipulated facts.  The stipulated facts are found at Document 21 in the Court's docket.

# FACTUAL BACKGROUND

The subject vehicle is a 1989 Toyota pickup truck ("the Pickup Truck"), and is owned by James Shaw ("Shaw") and his grandmother, Lucille Shaw. See Facts 1, 12. On January 27, 2007, Shaw drove the Pickup Truck to the Valley IGA Deli & Bakery, located in Waterford, California. See Fact 2. Shaw's male English mastiff ("the Dog") rode unrestrained in the bed of the Pickup Truck. See Fact 3. The Pickup Truck's bed was open, with no cover, camper, or canopy. See Fact 4. Shaw legally parked and exited the vehicle to go inside the IGA, leaving the Dog unrestrained in the bed of the Pickup Truck. See Fact 5.

While Shaw was inside the IGA, Donald Collins ("Collins") approached the Pickup Truck. See Fact 6. Three witnesses all saw Collins lean into the Pickup Truck's open bed. See Fact 7. Witness Gonzales stated that Collins leaned into the bed of the Pickup Truck and made a vocal noise at the Dog that sounded similar to "boo" or "boy." See Fact 8. The Dog suddenly jumped up and bit Collins in the face, causing a severe injury.[2] See Fact 9. When Collins withdrew from the Pickup Truck, the Dog sat back down in the bed. See Fact 10. At no time did the Dog leave the bed of the Pickup Truck. See Fact 11.

Collins sued, and Oregon tendered Collins's claim against the Shaws to National on August 29, 2007. See Fact 22. National denied coverage for Collins's claim on October 3, 2007. See Fact 23. On September 15, 2008, Oregon settled Collins's claim against the Shaws for $100,000.00. See Fact 24. National did not contribute to the settlement. See Fact 25.

The Pickup Truck  was insured under a National policy, effective from January 2007 to July 2007. See Fact 13. The National policy provides $100,000.00 in bodily injury coverage per person. See Fact 15. The "Part A-Liability Coverage" portion of the National policy provides in part:

INSURING AGREEMENT

    A.  We will pay damages for "bodily injury" or "property damage" for which an "insured" becomes legally responsible because of an "auto accident."  Damages include prejudgment interest awarded against the

---

[2] Witness Sullivan explained that the Mastiff bit part of Collins's nose off. See Doc. No. 21 Exhibit A. The description of the injury was not part of the joint facts, but Sullivan's statement was submitted with the joint facts.

> "insured."  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defense ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.
>
> B.  "Insured" as used in this Part means:
>    1.   You or any "family member" for the ownership, maintenance, or use of any auto or "trailer"
>    2.   Any person using "your covered auto."
>    3.   For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

See Fact 16.

Oregon provided a homeowner's policy to Shaw's grandparents, Floyd and Lucille Shaw, effective from October 2006 through October 2007.  See Fact 17.  The Oregon policy provides $100,000.00 of personal liability coverage per occurrence.  See Fact 19.  Under the section "**Coverage L - Personal Liability**," the Oregon policy provides:

> We pay, up to our limit, for this coverage stated in the declarations, all sums, . . . for which an insured is legally liable because of bodily injury, . . . caused by an occurrence to which this coverage applies.  If a suit is brought against the insured, we will defend the insured at our expense, . . .  Provided the suit results from bodily injury, . . . caused by an occurrence to which this coverage applies.

See Fact 21.  Additionally, in a separate section, the Oregon policy states that "Coverage L" is "excess over other valid and collectible insurance that applies to the loss or claim."  See Fact 20.

Under the section "**Coverage M - Medical Payments to Others**," the Oregon policy provides:

> We pay, up to our limit, for this coverage stated in the declarations, medical expenses incurred or determined within three years from the date an accident occurring during the policy period causing bodily injury to which this coverage applies. . . .  This coverage applies only to . . . 2.  a person away fom an insured premises if the bodily injury: . . . b. is caused by an activity of an insured; . . . d. is caused by an animal owned by or in the care of an insured.

See Fact 21.

Under the section "**Incidental Liability Coverages**," the Oregon policy provides, "We pay for the bodily injury . . . which . . . c. results from an insured's use of a recreational motor vehicle which is not owned by an insured."  See id.

3

Under the **Exclusion** section for "Coverage L" and "Coverage M", the Oregon Policy provides that those particular coverages "do not apply to liability which results directly or indirectly from: . . . 4. motorized vehicles, including; a. the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading, or unloading of motorized vehicles . . . ."  See id.  However, the exclusion does not apply if "coverage is provided for by [the] Incidental Motorized Vehicle Coverage," which, as indicated above, deals with recreational motor vehicles.  See id.

Finally, the Oregon policy contains the following pertinent **Definitions**:

4.      "'Bodily injury' means bodily harm, sickness, or disease . . . ."

9.      "'Insured' means: a. you; b. your relatives if residents of your household; . . ."

9.e.    For purposes of Coverage L and Coverage M, "insured" also means, "persons using or caring for watercraft or animals owned by an insured and to which this insurance applies . . . ."

12.     "'Motorized Vehicle' means any self-propelled land or amphibious vehicle . . . including parts and equipment.  The following categories of motorized vehicle have specific meaning as used in this policy:

a. 'Motor Vehicle' means a motorized vehicle, trailer, or semi-trailer: . . .

(1) subject to motor vehicle licensing; or (2) designed for use or travel on public roads.

b. 'Recreational Motor Vehicle' means a motorized vehicle (other than a motor vehicle as defined above) . . . designed or used for recreation, vacation, or leisure time activities."

13.     "'Occurrence' means an accident, including continuous or repeated exposure to similar conditions, which results during the policy period in bodily injury . . . ."

See Fact 20.

Oregon filed this lawsuit in March 2009 against National and seeks equitable contribution, subrogation, indemnity, and declaratory relief regarding the $100,000 it paid to settle Collins's case against the Shaws, as well as legal defense costs.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The

1    opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must

2    instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for

3    trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting

4    Fed. R. Civ. Pro. 56(e)).

5         The evidence of the opposing party is to be believed, and all reasonable inferences that

6    may be drawn from the facts placed before the court must be drawn in favor of the opposing

7    party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad,

8    Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air,

9    and it is the opposing party's obligation to produce a factual predicate from which the inference

10   may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008);

11   UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of

12   material fact does not spring into being simply because a litigant claims that one exists or

13   promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d

14   15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

15   Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

16   "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or

17   'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427

18   F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate

19   circumstances to consider materials that are not properly brought to its attention, but the court is

20   not required to examine the entire file for evidence establishing a genuine issue of material fact

21   where the evidence is not set forth in the opposing papers with adequate references.  See

22   Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San

23   Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the non-moving party fails

24   to produce evidence sufficient to create a genuine issue of material fact, the moving party is

25   entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

26

27                                    **NATIONAL'S POSITION**

28        National argues that it should be granted summary judgment for two reasons:  the

                                                  6

incident does not constitute an "auto accident" and the incident did not arise out of the ownership, maintenance, or use of an automobile.  The situation is that of a dog bite, it is not an "auto accident."  The Pickup Truck was not in motion when the incident occurred, the Pickup Truck's doors were not being opened or closed, the Dog was not being loaded or unloaded, and the Dog did not cause the accident.  The Dog just happened to be in the bed of the Pickup Truck.  The Pickup Truck's only involvement is that it was the means of transport of the Dog to the location that was the situs of the injury.  As shown by analogous California precedent and on point out of state authority, because the use of the Pickup Truck had nothing to do with the biting incident other than as the mere situs of the injury, the Pickup Truck was not being "used."

## OREGON'S POSITION

Oregon primarily relies on a single California case's discussion of on point, but out of state, authority.  Pursuant to those cases and the California court's discussion thereof, the Pickup Truck was "used" to transport the Dog and the Pickup Truck's design facilitated Collins's injury.  Further, the term "auto accident" should be read as meaning an "accident arising out of the use of an auto."  Since the bite occurred while Shaw was using the Pickup Truck, the dog bite arose out of the use of an automobile and was an auto accident.

## GENERAL LEGAL STANDARD

Despite some special features, insurance policies "are still contracts to which the ordinary rules of contractual interpretation apply."  <u>Powerine Oil Co., Inc. v. Superior Court</u>, 37 Cal.4th 377, 390 (2005).

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties.  Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract."  The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage," controls judicial interpretation.

<u>TRB Investments, Inc. v. Fireman's Fund Ins. Co.</u>, 40 Cal.4th 19, 28 (2006); <u>MacKinnon v.</u>

1    Truck Ins. Exchange, 31 Cal.4th 635, 647–648 (2003).  "A policy provision will be considered

2    ambiguous when it is capable of two or more constructions, both of which are reasonable."

3    Powerine, 37 Cal.4th at 390; E.M.M.I. Inc. v. Zurich American Ins. Co., 32 Cal. 4th 465, 470

4    (2004).  "The proper question is whether the [provision or] word is ambiguous in the context of

5    this policy and the circumstances of this case.  The provision will shift between clarity and

6    ambiguity with changes in the event at hand."  E.M.M.I., 32 Cal.4th at 471.  "The fact that a term

7    is not defined in the policies does not make it ambiguous."  Powerine, 37 Cal.4th at 390.

8    "[I]nsurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the

9    insured, [whereas] … exclusionary clauses are interpreted narrowly against the insurer."  TRB,

10   40 Cal.4th at 28; MacKinnon, 31 Cal.4th at 648.  "This broad construction will aid the insured in

11   meeting its burden of proof, thereby ensuring that the end result (coverage or non-coverage)

12   conforms to the insured's objectively reasonable expectations."  TRB, 40 Cal.4th at 28;

13   MacKinnon, 31 Cal.4th at 648.

14

15                                                    **DISCUSSION**

16          There are no disputed facts in this case.  As framed by the parties, there are two key

17   issues – whether the incident was an "auto accident" and whether the incident arose out of the

18   "use" of the Pickup truck.

19          *The Term "auto accident"*

20          The term "auto accident" is not defined in National's policy.  National does not advocate

21   for a particular definition, other than to say that what happened to Collins was not an "auto

22   accident."

23          The Court is unaware of any California decisions that have defined the term "auto

24   accident."  California courts have held that, in the context of liability insurance, the term

25   "accident" means "an unexpected, unforeseen, or undesigned happening or consequence from

26   either a known or unknown cause."  Delgado v. Interinsurance Exchange of Auto. Club of S.

27   Cal., 47 Cal.4th 302, 308 (2009); Hogan v. Midland Nat'l Ins. Co., 3 Cal.3d 553, 559 (1970).

28   Also, as per the California Insurance Code, "[a]utomobile liability insurance must cover liability

                                                         8

'arising out of the ownership, maintenance, or use of any motor vehicle . . . .'"  Walter H.

Croskey, et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) § 7:1189

(hereinafter "Rutter Group") (quoting Cal. Ins. Code § 11580.1(a)); see Daun v. USAA Casualty

Ins. Co., 125 Cal.App.4th 599, 609 (2005) (stating that § 11580.1 governs "the mandatory

provisions for every automobile liability policy issued or delivered in California," and citing §

11580.1(a)); State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 9 Cal.App.3d 508, 524-25

(1970) (noting that § 11580.1 was a comprehensive enumeration of mandatory and permissible

features to be contained in automobile policies issued or delivered in California).  In apparent

accordance with the Insurance Code, the National policy defines the "insured" as meaning "You

or any 'family member' for the ownership, maintenance, or use of any auto . . . ."  In jurisdictions

that have provisions similar to Insurance Code § 11580.1(a), some courts have defined the phrase

"auto accident" in reference to those statutory insuring requirements.  See North Star Mut. Ins.

Co. v. Peterson, 749 N.W.2d 528, 532 (S.D. 2008); Hawkeye-Security Ins. Co. v. Gilbert, 866

P.2d 976, 978-79 (Idaho Ct. App. 1994); see also Nationall Merch. Co. v. United Service Auto.

Ass'n, 400 So. 2d 526, 531 (Fla. Dist. Ct. App. 1981).  The Rutter Group California practice

guide follows this approach:  "To uphold coverage wherever possible, courts will probably

interpret 'auto accident' in light of the elements listed [in § 11580.1(a)], i.e. an 'accident' . . .

'arising out of ownership, maintenance, or use, including loading or unloading' of the insured

automobile."  Rutter Group § 7:1192.  Such an approach would be consistent with the

expectations of both a reasonable insured and a reasonable insurer – parties to a California

insurance policy would expect and intend for the policy's coverage to meet the requirements of

the California Insurance Code.  Cf. E.M.M.I., 32 Cal.4th at 470-71; Rutter Group §§ 7:1189,

7:1192.  In light of the above, the Court will define the term "auto accident" to mean an

unexpected, unforeseen, or undesigned happening or consequence arising out of the ownership,

maintenance, or use of an automobile.  See Cal. Ins. Code § 11580.1(a); Delgado, 47 Cal.4th at

308; Peterson, 749 N.W.2d at 532; Rutter Group §§ 7:1189, 7:1192.

       Since there is no doubt that Collins's injury was "undesigned," and in light of the parties'

arguments, the pertinent question is whether Collins's injury arose out of the "use" of the truck.

1     *The Term "arising out of the use of an automobile"*

2     The California Supreme Court has discussed the phrase "arising out of the use" in the

3 context of an automobile insurance policy.  See State Farm Mut. Auto. Ins. Co. v. Partridge, 10

4 Cal.3d 94, 100-01 (1973); R. A. Stuchbery & Others Syndicate 1096 v. Redland Ins. Co., 154

5 Cal.App.4th 796, 802 (2007); Prince v. United National Ins. Co., 142 Cal. App. 4th 233, 238

6 (2006).  It is "established beyond contention that this language of 'arising out of the use,' when

7 utilized in a coverage or insuring clause of an insurance policy, has a broad and comprehensive

8 application, and affords coverage for injuries bearing almost any causal relation with the

9 vehicle." Partridge, 10 Cal.3d at 100; Prince, 142 Cal.App.4th at 238-39.  However, "some

10 minimal causal connection" between the use of the vehicle and the accident is "required."

11 Partridge, 10 Cal.3d at 100 n.7; State Farm Mutual Automobile Ins. Co. v. Grisham, 122

12 Cal.App.4th 563, 566–67 (2004).  After *Partridge*, a majority of California decisions have

13 applied the "predominating cause/substantial factor test" in order to determine whether the

14 "minimal causal connection" requirement has been met.  See Stuchbery, 154 Cal.App.4th at 802;

15 Grisham, 122 Cal.App.4th at 566–67.   "Under this test, a mere 'but for' connection between the

16 use of the vehicle and the alleged injuries is insufficient to bring the claim within the scope of

17 coverage" because to "hold otherwise would convert auto liability policies into general liability

18 policies." Stuchbery, 154 Cal.App.4th at 802; Grisham, 122 Cal.App.4th at 567.  "Coverage

19 based on 'use' must encompass an event that reasonably could have been contemplated as falling

20 within the insurance policy." Grisham, 122 Cal.App.4th at 567.  Neither where the vehicle

21 merely provides the situs of the tort, nor where the vehicle serves simply as the transportation of

22 a tortfeasor to a site where he commits a tort after departing from the vehicle are sufficient for

23 causation to be found between the injury and the vehicle's "use." See Grisham, 122 Cal.App.4th

24 at 567; American Nat'l Property & Cas. Co. v. Julie R., 76 Cal.App.4th 134, 139-40 (1999).

25     Both parties rely on California authority, at least in part, although there are no California

26 cases directly on point.  Oregon relies on *State Farm Mutual Automobile Ins. Co. v. Grisham*,

27 122 Cal.App.4th 563 (2004), and National relies on *Ohio Casualty Ins. Co. v. Hartford Accident*

28 *& Indemnity Co.*, 148 Cal.App.3d 641 (1983) and *American Nat'l Property & Cas. Co. v. Julie*

*R.*, 76 Cal.App.4th 134 (1999).  Of these three cases, the Court finds *Julie R.* to be the most helpful.

    *Julie R.* involved the tragic rape of a woman in an uninsured motorist's car.  See Julie R., 76 Cal.App.4th at 137.  Julie made a claim for benefits through her father's automobile policy under the uninsured motorist provision.  See id.  The issue was whether the rape arose from the use of the automobile.  See id. at 138.  *Julie R.* held that it did not and in part explained:

> [W]here the role of the vehicle in the injury is merely as a situs for the act causing injury, courts have found that the injury does not arise from the use of the vehicle and that the injury is not covered. For example, coverage was denied for an injury caused when a gun inside a car at rest discharged because the bolt of the gun was pulled back. ( Aetna Casualty & Surety Co. v. Safeco Ins. Co . (1980) 103 Cal. App. 3d 694.) Coverage also was denied for injury caused by the transmission of herpes during consensual sex on an insured boat on the ground that the use of the boat was merely incidental to the sexual activity. ( Peters v. Firemen's Ins. Co. (1998) 67 Cal. App. 4th 808.)

> In this case, the vehicle was at rest and served as the situs of the assault causing injury to Julie R.  Julie R. argues, however, that the assailant "used" certain physical aspects of the vehicle to trap her and to consummate the assault.

> Mere use of a vehicle in some way connected to the events giving rise to the injury is insufficient to establish coverage. If use alone established coverage, then coverage should have been found in cases where the vehicle merely was the situs of the injury. There must be a causal connection between the use of the vehicle and the injury.
> ...........

> Applying the predominating cause/substantial factor test to the facts of this case, we find that the "use" of [the] BMW in the rape of Julie R. was incidental to, and not a substantial factor in, the infliction of injury on Julie R.  In this case, the vehicle was "used" in three ways. It was transportation to and from the scene of the assault. It was parked along a chain link fence, restricting egress from the passenger side of the car. And it served as a confining locale for the rape. None of these "uses" of the vehicle was a substantial factor in the injury to Julie R.

Id. at 139-40.

    In the case at bar, it appears that the Pickup Truck served as the mere situs for the canine assault that caused Collins's injury.  *Julie R.* indicates that merely being in a car at the time of an injury does not show a sufficient causal connection between the injury and the use of the car.  See id.; cf. Safeco Ins. Co. v. Hale, 140 Cal.App.3d at 352-53 (1983) (agreeing with Missouri court that, because a tethered dog is not part of the "premises," it "cannot be said that a dog bite arises out of . . . the premises.  That it *occurs upon the premises* does not establish a causal connection

1  between the bite and the premises.") (emphasis in original).  That is all that occurred here:

2  Collins was assaulted in or about the Pickup Truck.  The Court does not see the Pickup Truck's

3  role in the biting as material.  It was fortuitous that Collins was bit while he leaned into the

4  Pickup Truck since he could have been bitten in the face while walking on the side walk and

5  leaning down towards the Dog.  Cf. Ohio Casualty, 148 Cal.App.3d at 646 (noting that the

6  insured's negligent supervision of child, which resulted in child being struck by a boat while

7  swimming in a lake, could have happened on a dock or on the shore and that it was simply

8  fortuitous that the negligence occurred while the insured was on a boat).  The uses argued by

9  Oregon are similar to the uses that were found to be inadequate in *Julie R.*  Cf. Jule R., 76

10  Cal.App.4th at 141-42.  Oregon has not shown that the biting arose or grew out of the use of the

11  Pickup Truck, rather, Oregon has shown only that the Pickup Truck was the site where the biting

12  occurred.  See Julie R., 76 Cal.App.4th at 140-42; Keppler v. American Family Mut. Ins. Co.,

13  588 N.W.2d 105, (Iowa 1999) (no automobile coverage where vehicle was merely location/situs

14  where bite occurred); Farmers Union Co-Op Ins. Co. v. Allied Prop. & Cas., 569 N.W.2d 436

15  (1997) (same); Heringlake v. State Farm Fire & Cas. Co., 872 P.2d 539 (Wash. Ct. App. 1994)

16  (same); Alvarino v. All State Ins. Co., 537 A.2d 18, 21 (Super. Ct. Pa. 1988) (same); American

17  States Ins. Co. v. Allstate Ins. Co., 484 So.2d 1363, 1364 (Fla. Ct. App. 1986) (same).  This is

18  not a sufficient causal connection to the use of the Pickup Truck.  See Grisham, 122 Cal.App.4th

19  at 567; Julie R., 76 Cal.App.4th at 139-40.

20      Oregon relies heavily on *Grisham*.  In that case, two dogs escaped from a parked pickup

21  truck, ran 20 to 25 yards across the street, and one dog bit Mr. Grisham.  See Grisham, 122

22  Cal.App.4th at 525.  The Court of Appeal held that the dog bite did not arise out of the use of the

23  pickup truck because the truck merely transported the dogs to a place near the injury site, and the

24  injury occurred 20 to 25 yards away from the truck.  See id. at 528.  After reaching its

25  conclusion, the Court of Appeal distinguished two out of state cases that Mr. Grisham had cited:

26      Both *Till* [Farmers Ins. Co. of Ariz. v. Till, 825 P.2d 954 (Ariz. Ct. Ap. 1991)]
       and *Diehl* [Diehl v. Cumberland Mut. Fire Ins. Co., 686 A.2d 785 (N.J. Super. Ct.
27      1997)] concluded the injuries at issue arose out of the use of an insured car.  In
       both cases a person in (or essentially in) the car was bitten by a dog, and the biting
28      was facilitated by the car's design.  (*Till* . . . [sliding window between dog in

camper and bitten passenger in pickup cab failed to block dog]; *Diehl* . . . [biting was facilitated by the height and design of a pickup truck bed].)  In this sense, *Till* and *Diehl* are analogous to our decision in *Hartford*.[3]  By contrast, Grisham was not bitten while in Vandagriff's pickup truck pursuant to a design that facilitated such biting; instead, Grisham was 20 to 25 yards from the pickup when he was bitten.

Id. at 569.

The holding of *Grisham* is not applicable to this case because the Dog never left Shaw's Pickup Truck, unlike the *Grisham* dog.  Oregon's reliance on *Grisham* stems from the discussion of the out of state cases.  However, *Grisham* never said that it agreed with the holdings of *Till* and *Diehl*, and, being non-binding out of state authority, there was technically no need to engage in an in-depth analysis of those cases.  In fact, it is not clear that any discussion of *Till* and *Diehl* was necessary.  The quickest way to distinguish those cases was to simply point out the absence of the key fact – those cases did not involve a person who was bitten 20 to 25 yards away from the truck.  *Grisham*'s discussion of *Till* and *Diehl* is not sufficiently substantial to sway the Court away from *Julie R.*, as well as those out of state cases that, consistent with *Julie R.*, find the automobile to be the mere situs of dog bites.

Because the evidence shows that the Pickup Truck was the mere situs of this Dog bite, Collins's injury did not arise out of the use of the Pickup Truck.  National's policy does not provide coverage.  Its appropriate to grant National's motion for summary judgment and deny Oregon's motion for summary judgment.

**CONCLUSION**

Both parties seek summary judgment on the issue of whether Collins's injury fits within National's automobile policy coverage.  There are no factual disputes, but neither are there California cases directly on point.  The Court finds that the principles in *Julie R.* govern this case. For National's policy to apply, liability must be based on an unexpected, unforeseen, or undesigned happening or consequence arising out of the ownership, maintenance, or use of an automobile.  The concept that an injury "arises out of the use of an automobile" is broad.

---

[3]Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co., 33 Cal.App.3d 26, 32 (1973).

However, there must be a sufficient causal connection between the use of the automobile and the injury in question.  Where an automobile serves only as the situs of the injury, there is an insufficient causal connection, and there will be no coverage.  Here, Oregon has not sufficiently shown that the Dog bite/Collins's injury grew or arose out of the use of the Pickup Truck. Instead, Oregon has shown that the Pickup Truck was the situs of the injury.  Since the Pickup Truck was the mere situs, Collins's injury did not arise out of the use of the Pickup Truck. Therefore, National's policy did not provide coverage, and summary judgment in favor of National is appropriate.


        Accordingly, IT IS HEREBY ORDERED that:

1.      Defendant's motion for summary judgment is GRANTED;

2.      Plaintiff's motion for summary judgment is DENIED;

3.      All currently scheduled dates and deadlines, including the trial date, are VACATED; and

4.      The Clerk shall enter judgment in favor of Defendant and CLOSE this case.


IT IS SO ORDERED.

**Dated:    April 5, 2010**                          **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE